United States District Court
Western District of Texas
Del Rio Division

| | |
|---|---|
| United States of America,<br>  Plaintiff,<br><br>v.<br><br>IVAN LEE VELASQUEZ,<br>  Defendant. | No. DR-14-CR-0688-AM-4 |

**Government's Response to Defendant's Sentence-Reduction Motion**

Defendant IVAN LEE VELASQUEZ is currently serving a prison term based on his conviction for Conspiracy to Conduct the Affairs of an Enterprise through a Pattern of Racketeering in violation of 18 USC 1962(d). Relying in part on the COVID-19 pandemic, he has moved under 18 U.S.C. § 3582(c)(1)(A) for a reduction in his term of imprisonment.

For three independent reasons, this Court should deny Defendant's motion. First, Defendant has failed to show the sort of extraordinary and compelling reasons that would warrant a reduction. Second, Defendant has failed to show he is not a danger to any other person or the community. Third, Defendant has failed to show that the statutory sentencing factors outlined in 18 U.S.C. § 3553(a) would support a reduced prison term.

**Background**

**A. Defendant's Offense, Criminal History, and Sentence**

On January 26, 2018, Defendant was convicted of Conspiracy to Conduct the Affairs of an Enterprise through a Pattern of Racketeering in violation of 18 USC 1962(d). (PSR ¶ 6, ECF No 806.) Defendant, age 43, has significant drug trafficking criminal history that dates back to 2004 when he was convicted of both Possession with Intent to Distribute Marijuana and the Importation of Marijuana and was sentenced to 15 months imprisonment followed by three years of supervised release. PSR ¶¶ 83. Defendant was then convicted of Possession with Intent to Distribute Less Than 500 Kilograms of Cocaine in 2007 and was sentenced to 84 months imprisonment, followed by five years of supervised release. PSR ¶¶ 85. After Defendant

completed his prison sentence on Intent to Distribute Cocaine charge and was release on supervised release, he became the leader of the Texas Mexican Mafia (TMM) located in Eagle Pass, Texas. PSR ¶¶ 42.  The Texas Mexican Mafia (TMM) is a recognized threat group in Texas and controls geographic areas by extortion, threats of violence, murder, arms smuggling, drug trafficking, and bribes to corrupt law enforcement officials. ¶¶ 38.  Defendant participated and was later for convicted for his role in a RICO conspiracy associated with Texas Mexican Mafia activities, spanning years, which included distributing various types of controlled substances as well as committing extortion, assault, and murder. PSR ¶¶ 36.  Defendant's participation within the conspiracy was classified as a leader within the conspiracy. PSR ¶¶ 37.  Defendant's leadership role within the conspiracy included the ordering of collection of street taxes for narcotic sales and the order to assault specific individuals. PSR ¶¶ 40.

  Defendant was subsequently arrested for violation of terms of his supervised release on December 30, 2013. PSR ¶¶ 41. While being held in violation of his supervised release, Defendant was housed in the Val Verde Correctional Facility in Del Rio, Texas. PSR ¶¶ 46. While in Val Verde Correctional facility, Defendant ordered and participated in the smuggling of narcotics into the Val Verde Correctional Facility by bribing a correctional officer, who then delivered narcotics directly to Defendant.  PSR ¶¶ 43-51. Defendant assumed the leadership role with the TMM within the Val Verde Correctional Facility and possessed a "hit list" of TMM members who testified in trial against other TMM members. PSR ¶¶ 52. Based upon the investigation, 24.4 grams of heroin that was to be smuggled into the Val Verde Correctional Facility for Defendant. PSR ¶¶ 53.

  Defendant plead guilty to Conspiracy to Conduct the Affairs of an Enterprise through a Pattern of Racketeering, 18 USC 1962(d) on May 4, 2016.  Defendant was sentenced to 216 months imprisonment followed by 5 years of supervised release on January 26, 2018, with credit for time served. Defendant was taken into custody for this offense on May 23, 2014 and has currently served 98 months of his sentence.

Based on Defendant's conduct and criminal history, the guideline range was 360 to Life months. (PSR ¶ 121.) After considering the sentencing factors in 18 U.S.C. § 3553(a), this Court selected a prison term of 216 months. (Judgment 2, ECF No. 886.)

### B. Defendant's Current Term of Imprisonment

Defendant has now served about 98 months, or about 45%, of his current prison term. He is currently scheduled for release in September 2029. *See* Fed. Bureau of Prisons, Find an inmate, https://www.bop.gov/inmateloc/ (last visited July 10, 2022).

Defendant is currently housed at USP McCreary. *See id.* USP McCreary houses 1,558 inmates. Fed. Bureau of Prisons, *COVID-19 Cases*, COVID-19 Coronavirus (*July 10, 2022*, https://www.bop.gov/coronavirus/. At the time of filing, BOP reported zero inmates testing positive for COVID-19 at USP McCreary. *See id.* Although two inmates there have died of COVID-19, 277 inmates have recovered. *Id.*

### C. Defendant's Previous Motions

Defendant previously filed his first request for compassionate release on May 27, 2020. (ECF 934). Defendant supplemented this motion on December 17, 2020. (ECF 943). Defendant's motion was denied without prejudice on August 10, 2021. (ECF 948). Defendant's previous motion exclusively argued that he should be considered for early release due to COVID-19 and his pre-existing conditions that could potentially create adverse effects if he were to contract COVID-19 while in custody.

### D. BOP's Response to COVID-19

In response to the COVID-19 pandemic, BOP has modified its operations plan to protect the health of inmates at BOP facilities. *See* Fed. Bureau of Prisons, BOP Modified Operations (Nov. 25, 2020), at https://www.bop.gov/coronavirus/covid19_status.jsp. Under this plan, BOP is limiting inmate movement to maximize social distancing; screening inmates involved in certain essential group activities; isolating and testing symptomatic inmates potentially exposed to the virus; and quarantining asymptomatic inmates potentially exposed. BOP is also testing new

inmates and limiting movement between facilities (with exceptions for needed medical treatment, legal proceedings, and reducing overcrowding). BOP has suspended official staff travel and training (except for relocation travel and training for new staff) and has limited contractors to those providing essential services. Screening for staff and contractors entering BOP facilities includes temperature checks and self-reporting.

As vaccines have become available, BOP has made significant progress in distributing and administering them. *See* Fed. Bureau of Prisons, *COVID-19 Vaccine Implementation*, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/. (last visited July 10, 2022). So far, BOP has administered 323,756 doses. *Id.* Although BOP has prioritized vaccinating correctional staff to guard against virus transmission into and out of prisons, the vaccine is also being made available to many inmates. *See* Fed Bureau of Prisons, COVID-19 Vaccine Guidance 5 (Mar. 11, 2021), https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf. Inmates are assigned priority based on factors such as job assignment, age, and medical condition. *Id.* at 6-8. At USP McCreary in particular, BOP has fully vaccinated 199 staff members and 1,406 inmates. Fed. Bureau of Prisons, *COVID-19 Vaccine Implementation*, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/. (last visited July 10, 2022).

BOP also continues to designate prisoners who pose the least threat to the community to serve their terms of imprisonment in home confinement. Home confinement is not a sentence reduction; instead, BOP designates an inmate's residence as the place he or she will serve a term of imprisonment. *See* 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541. Under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), BOP may now "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement." CARES Act, Pub. L. No. 116-136, § 12003, 134 Stat. 281, 516 (2020). The Attorney General has directed that BOP prioritize and maximize transfers to home confinement of inmates vulnerable

to COVID-19 in appropriate circumstances.[1] BOP is devoting all available resources to carrying out that directive. As of this filing, BOP has transferred 44,411 inmates (including inmates who have since completed service of their sentence) to home confinement. See Fed. Bureau of Prisons, *COVID-19 Home Confinement Information*, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited July 10, 2022). The total BOP population, which was approximately 170,000 at the beginning of the pandemic, is now more than 10% lower, at the lowest level in decades.

     E.     **Administrative Requests and Consideration**

On August 4, 2020, Defendant's administrative request for a sentence reduction submitted to the warden of United States Penitentiary McCreary was reviewed and denied. *See* Ex. 1 (Administrative Request). Defendant's requested was denied based upon his high risk of recidivism level, history of violence, and disciplinary record.

     F.     **Defendant's Current Motion**

On June 16, 2022, Defendant filed a motion with this Court seeking a sentence reduction under § 3582(c)(1)(A). (Def. Mot. 1-37, ECF No. 969.) He argues that he exhausted his administrative remedies, that Covid-19 has created harsh conditions within the prison facility because the inmates have been subject to lockdown conditions and solitary confinement as a result of the virus on top of his pre-existing medical conditions that create an substantial increase in the likelihood of experiencing death or serious illness if he were to contact Covid-19.

---

[1] *See* Memorandum from William P. Barr, Att'y Gen., to Michael Carvajal, Dir., Fed. Bureau of Prisons (Mar. 26, 2020), https://www.justice.gov/file/1262731/download; Memorandum from William P. Barr, Att'y Gen., to Michael Carvajal, Dir., Fed. Bureau of Prisons (Apr. 3, 2020), https://www.justice.gov/file/1266661/download. The March 26 memorandum directs BOP to consider the totality of the circumstances, including the following non-exhaustive list of factors: the age and vulnerability of the defendant to COVID-19; the security level of the defendant's facility; the defendant's conduct in prison; BOP's assessment of the defendant's recidivism risk; whether the defendant has a verifiable re-entry plan that prevents recidivism, maximizes public safety, and would result in a lower risk of contracting COVID-19; and the defendant's crime of conviction. BOP will not designate a defendant to home confinement if doing so would likely increase the risk of contracting COVID-19.

Defendant specifically states that he suffers from a obesity, asthma, non-Hodgkin's lymphoma, and malignant hyperthermia. Additionally, Defendant argues that he has rehabilitated and is no longer a threat to society if he were to be released pursuant to the First Step Act.

**Argument**

A district court "generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). That general rule is subject to exceptions "in limited circumstances," *id.* at 824, including when a defendant can meet the requirements of 18 U.S.C. § 3582(c)(1)(A). As the movant, Defendant bears the burden to establish that he should receive a sentence reduction. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014). He has not done so. Although Defendant has exhausted administrative remedies, Defendant has failed to show the sort of extraordinary and compelling reasons that would warrant a reduction. Defendant has also failed to show he is not a danger to any other person or the community or that the statutory sentencing factors outlined in 18 U.S.C. § 3553(a) would support a reduced prison term.

**I.    Defendant has not identified extraordinary and compelling reasons for a sentence reduction.**

A court can grant a sentence reduction under § 3582(c)(1)(A) only if "extraordinary and compelling reasons" justify the reduction. The Fifth Circuit has explained that the policy statement in section 1B1.13 of the Sentencing Guidelines, although not dispositive, "informs [a court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release." *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021), *cert.*

*denied*, No. 20-7832, 2021 WL 2044647 (U.S. May 24, 2021).[2] Defendant has not identified any reason for a sentence reduction that this Court, informed by the commentary to section 1B1.13, should recognize as extraordinary and compelling.

> A. **Defendant has not identified any medical condition that would qualify as an extraordinary and compelling reason for a sentence reduction.**

"Fear of COVID-19 doesn't automatically entitle a prisoner to release." *Thompson*, 984 F.3d at 435; *accord United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Rather, the policy statement's commentary, which informs a court's analysis of whether medical conditions count as extraordinary and compelling reasons for a sentence reduction, focuses on circumstances in which a medical condition is sufficiently serious to warrant a sentence reduction. *Thompson*, 984 F.3d at 433 (quoting USSG § 1B1.13, cmt. n.1(A)). These conditions include a "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13, cmt. n.1(A). Courts have, "in some exceptional cases," reduced sentences "where the defendant has demonstrated an increased risk of serious illness if he or she were to contract COVID." *Thompson*, 984 F.3d at 434. But Defendant has not demonstrated that he faces an increased risk of serious illness from COVID-19.

> 1. **Defendant has been vaccinated against COVID-19.**

Defendant cannot show that he still faces a substantial risk from COVID-19, even in combination with other conditions, because he has already been vaccinated against COVID-19. *See United States v. Beltran*, No. 6:16cr4, 2021 WL 398491, at *3-4 (S.D. Tex. Feb. 4, 2021);

---

[2] A subsequent panel of the Fifth Circuit held that "neither the policy statement nor the commentary to it binds a district court addressing a prisoner's own motion" for a sentence reduction. *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021). Any argument that *Shkambi* precludes consideration of the policy statement would be inaccurate. The prior panel opinion in *Thompson*, which recognizes that the policy statement informs courts' analyses of sentence-reduction motions, governs. *See United States v. Smith*, 354 F.3d 390, 399 (5th Cir. 2003) (explaining that prior panel decisions control). The government maintains that the commentary is authoritative and binding.

*United States v. Isidaehomen*, No. 3:16cr240, 2021 WL 243458, at *3 (N.D. Tex. Jan. 25, 2021). On April 6, 2021, Defendant received the second of two doses of an approved Pfizer vaccine for COVID-19. *See* Ex. 2 at 25 (2020-21 Medical Records). All COVID-19 vaccines currently available in the United States have been shown to be highly effective at preventing COVID-19. Ctrs. for Disease Control, Benefits of Getting Vaccinated (June 19, 2022), at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html. In extensive testing, the vaccine Defendant received was 95% effective in preventing COVID-19 infection, including in participants with medical comorbidities associated with high risk of severe COVID-19 disease. See Food & Drug Admin., Decision Memorandum, Pfizer (Dec. 11, 2020), at https://www.fda.gov/media/144416/download. Additionally, Defendant received a third "booster shot" of an approved vaccine for COVID-19 on December 7, 2021. *See* Ex. 3 at 46 (2021-22 Medical Records).

Therefore, Defendant cannot show that the COVID-19 pandemic, even in combination with his claimed medical conditions, is an extraordinary and compelling reason justifying immediate release.

    **2.**    **Especially given Defendant's vaccination against COVID-19, Defendant's medical conditions do not amount to extraordinary and compelling reasons for a sentence reduction.**

In addition, the only risk factors Defendant presents that are recognized as underlying pre-existing conditions are being overweight and asthma.

Defendant is 71 inches tall and according to his last reported weigh in that occurred on May 31, 2022, he is 186 pounds which would equate to a has a body mass index of 25.9, which makes him slightly overweight. *See* Ex. 3 at 34 (2021-22 Medical Records); Ctrs. for Disease Control, Medical Conditions (May 2, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Although the government recognizes that this condition would qualify as an extraordinary and compelling reason if Defendant had not

been offered a vaccine,[3] courts have often denied sentence reductions in the absence of some other risk factor. *See, e.g.*, *United States v. Contreras*, No. 18cr46, 2021 WL 1536504, at *5 (E.D. Tex. Apr. 19, 2021); *cf. Thompson*, 984 F.3d at 434 (affirming ruling that "commonplace" conditions were not extraordinary and compelling reasons for a sentence reduction).

Defendant claims to suffer asthma. *See* Def. Mot. 21. The CDC currently recognizes that "moderate-to-severe" asthma "can make you more likely to get severely ill from COVID-19." *See* Ctrs. for Disease Control, Medical Conditions (May 2, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.[4] However, Defendant's medical records show that his asthma is well cared for in that he us prescribed a Albuterol Inhaler HFA (8.5 GM) 90 MCG/ACT. See Ex. 3 at 14 (2021-22 Medical Records). Furthermore, Defendant has no reports of asthma attacks or side effects as a result. Therefore, Defendant has not shown any medical condition that would qualify as "extraordinary and compelling reasons" for a sentence reduction.

---

[3] During the COVID-19 pandemic, a defendant has met the statutory requirement of "extraordinary and compelling reasons" if that defendant has not been (and will not soon be) offered a vaccine and has substantiated a condition from which he or she will not recover that the CDC recognizes "can make you more likely to get severely ill from COVID-19," *see* Ctrs. for Disease Control, Medical Conditions (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. (The CDC previously distinguished between conditions that definitively entail a greater risk of severe illness from COVID-19 and conditions that "might" entail a greater risk of illness. Recently, the CDC revised and combined the two lists. The government continues to follow CDC guidance.) In such cases, the defendant has established "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," USSG § 1B1.13 cmt. n.1(A)(ii)(I), and so has met the criteria for "extraordinary and compelling reasons" in the Sentencing Commission policy statement that informs courts' analysis of motions under § 3582(c)(1), *see United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021), *cert. denied*, No. 20-7832, 2021 WL 2044647 (U.S. May 24, 2021).

[4] The CDC previously distinguished between conditions that definitively entail a greater risk of severe illness from COVID-19 and conditions that "might" entail a greater risk of illness. Moderate-to-severe asthma was listed among the conditions that "might" entail a greater risk. Recently, the CDC revised and combined the two lists.

Defendant's medical records confirm that he has non-Hodgkin's lymphoma, hyperlipidemia. But the CDC has not identified these conditions as putting a person at greater risk for severe illness from COVID-19. See Ctrs. for Disease Control, Medical Conditions (May 2, 2022) , https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.  In addition, Defendant's medical records show that he is receiving appropriate, effective treatment and that the conditions are currently under control. See Ex. 3 at 41 (2021-22 Medical Records).  Regarding Defendant's diagnosed condition of non-Hodgkin's lymphoma, Defendant has had two stents removed with one additional stent that is pending removal, showing that the disorder has been well cared for and Defendant has been recovering from. *Id*. at 9.

### B. Defendant has not shown extraordinary and compelling reasons based on any consideration not addressed in the policy statement.

Although the policy statement is not dispositive, *see Thompson*, 984 F.3d at 433, Defendant has failed to articulate any reason for a reduction based on considerations not listed in the policy statement For that reason, to state a cognizable basis for a sentence reduction based on a medical condition, a defendant first must establish that his condition falls within one of the categories listed in the policy statement. Those categories include, as particularly relevant here, (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG 1B1.13, cmt. n.1(A). If a defendant's medical condition does not fall within one of the categories specified in the application note (and no other part of the application note applies), his or her motion must be denied.

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not fall into either of those categories and therefore could not alone provide a basis for a sentence reduction. The categories encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire

population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020);; see also United States v. Eberhart, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A).").

To classify COVID-19 as an extraordinary and compelling reason would not only be inconsistent with the text of the statute and the policy statement but would be detrimental to BOP's organized and comprehensive anti-COVID-19 regimens, could result in the scattershot treatment of inmates, and would undercut the strict criteria BOP employs to determine individual inmates' eligibility for sentence reductions and home confinement. Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a world-wide viral pandemic.

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under § 3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19,3 that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. USSG § 1B1.13, cmt. n.1(A)(ii)(I). Similarly, in light of COVID-19, a defendant "experiencing deteriorating physical or mental health because of the aging process" may be found to have a substantially diminished ability to provide self-care within the environment of a correctional facility, even where the defendant's age-related decline in health otherwise would not have qualified. USSG § 1B1.13, cmt. n.1(A)(ii)(III). But as part of its analysis of the totality

of circumstances, the Court should consider whether the inmate is more likely to contract COVID-19 if he or she is released than if he or she remains incarcerated. That will typically depend on the inmate's proposed release plans and whether a known outbreak has occurred at his or her institution.

In this case, the Defendant has asserted that his medical conditions make him more vulnerable to becoming seriously ill should he contract COVID-19. Specifically, he has asserted that he is immunocompromised due to his history of non-Hodgkin's lymphoma, which required chemotherapy and radiation and left a tumor in his chest. ECF No. 934 at 2. Additionally, Defendant suggests that his asthma, the stent in his trachea, and his multiple bronchoscopy laser surgeries place him "at a higher risk" for contracting COVID-19. *Id.* That contention does not establish "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A) and so Defendant's motion cannot be granted.

## II.    Defendant has not shown that he is not a danger to the safety of any other person or the community.

The policy statement that informs courts' analysis of sentence-reduction motions directs courts to consider whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13(2). Section 3142(g) directs a court to consider factors such as the nature and circumstances of the defendant's offense and the defendant's history and characteristics. 18 U.S.C. § 3142(g).

Defendant would pose a danger to public safety if released. This Court should deny a sentence reduction on that basis alone. Defendant held a leadership position within the TMM. The TMM is a violent gang that has long defined itself as "criminal dealing in drugs, contract killings, prostitution, large scale robbery, gambling, weapons, and 'in everything imaginable.'" See *United States v. Krout*, 66 F. 3d 1420, 1427-28 (5th Cir. 1995). Law enforcement considers the TMM a Tier 1 gang, posing the greatest gang threat to public safety. See *Tex. Dep't Public Safety, Texas Gang Threat Assessment* 4, 46 (Nov. 2018). It is one of the most significant gangs in the Western District of Texas, and its members have among the most arrests for violent crime

in the District. *Id*. at 34-35. As a leader in the TMM, the Defendant directed the TMM's trafficking of narcotics, intimidation of witnesses or cooperators, and extortion using intimidation and violence. PSR ¶¶ 38-53. In one case, he ordered another gang member to assault a victim with a tire iron. PSR ¶ 40. While housed at the Val Verde Correctional facility, Defendant organized the smuggling of heroin into the facility. He also has a significant criminal history involving drug trafficking and illegal firearms possession. He has performed poorly under court supervision, with multiple revocations of his supervised release. Additionally, Defendant continued his association with TMM as well as completed the actions that justified his RICO indictment and subsequent conviction. Defendant has clearly shown an unwillingness to follow the rules and regulations of this court when not incarcerated and under a term of supervised release, thus clearly remaining a danger to the community.

### III. Defendant has not shown that the sentencing factors in 18 U.S.C. § 3553(a) support a reduced prison term.

This Court must also consider the sentencing factors in 18 U.S.C. § 3553(a). See 18 U.S.C. § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020). At Defendant's sentencing, this Court determined that those factors supported his current sentence of 216 months. (Judgment 2.) Those factors continue to support that sentence rather than the 98-month sentence Defendant seeks.

The balance of the § 3553(a) factors strongly disfavor a sentence reduction. At present, Defendant's medical conditions are appropriately managed at his facility, which is also engaged in strenuous efforts to protect inmates against the spread of COVID-19 and would also act to treat any inmate who does contract COVID-19. In considering the nature and circumstances of his offense, Defendant committed a very serious offense, his third offense related to drug distribution and a significant escalation from prior offenses, including violent acts of racketeering. He was sentenced far below the advisory guidelines range and has served less than 50% of his sentence. A court could not confidently conclude that releasing Defendant nine years early would fulfill the statutory requirement to protect the public from further crimes, reflect the

seriousness of the offense, promote respect for the law, or provide just punishment for the offense. § 3553(a)(2)(A), (C). Such a substantial reduction would also not afford adequate deterrence for Defendant's criminal conduct. See § 3553(a)(2)(B); U.S. Sentencing Commission, Length of Incarceration and Recidivism (Apr. 2020), available at www.ussc.gov (reporting that offenders incarcerated for more than 120 months are much less likely to recidivate than those serving shorter periods of incarceration). This is particularly true here particularly given the ineffectiveness of previously imposed sentences in deterring Defendant's future crime.

Moreover, the factors militating against a sentence reduction outweigh Defendant's asserted concerns related to COVID-19. Even if this Court concludes (contrary to the argument set forth in the previous section) that Defendant has established "extraordinary and compelling reasons" for a sentence reduction based on the risk of serious illness after contracting COVID-19, he has not established that he would be any less vulnerable to illness if he were released. Despite his burden in these proceedings, Defendant proposes no clear release plan in his motion other than to live with his unidentified vaccinated family members in San Antonio.

- **Nature and circumstances of offense, § 3553(a)(1), and seriousness of offense, § 3553(a)(2)(A). Defendant's history and characteristics, § 3553(a)(1).** The nature, circumstances, and seriousness of Defendant's offense remain unchanged and reinforce the just nature of this Court's sentence. As addressed above, Defendant's affiliation with the Texas Mexican Mafia not only as a member but also as a leader who made orders for assaults and collected "street taxes" from drug distribution. Defendants' prior criminal convictions for Possession with Intent to Distribute Marijuana and the Importation of Marijuana in 2003 (PSR ¶¶ 83) as well as being convicted of Possession with Intent to Distribute Less Than 500 Kilograms of Cocaine in 2007. PSR ¶¶ 85. Defendant was still on a term of supervised release from the 2007 offense when he committed the instant offense. PSR ¶¶ 87. Furthermore, Defendant was classified as a career criminal. PSR ¶¶ 89.

- **Sentencing guidelines and unwarranted sentencing disparities, § 3553(a)(3)-(6).** The reduction Defendant seeks would ignore the sentencing guidelines and result in a sentence dramatically less than the 360- to life sentence those guidelines recommended. (PSR ¶ 121.) By ignoring the guidelines, a reduced sentence would disregard the need to avoid unwarranted sentence disparities among similarly situated defendants. *See Hughes v. United States*, 138 S. Ct. 1765, 1774 (2018) ("A principal purpose of the Sentencing Guidelines is to promote uniformity in sentencing imposed by different federal courts for similar criminal conduct.") Defendant committed a very serious offense, his third offense related to drug distribution and a significant escalation from prior offenses, including violent acts of racketeering. He was sentenced far below the advisory guidelines range when he received a sentence of 216 months and has served less than 45% of his sentence. A court could not confidently conclude that releasing Defendant seven years early would fulfill the statutory requirement to protect the public from further crimes, reflect the seriousness of the offense, promote respect for the law, or provide just punishment for the offense. § 3553(a)(2)(A), (C).

In sum, Defendant has failed to show that the sentencing factors in § 3553(a) support the reduced sentence he seeks.

### IV. This Court should deny Defendant's request home confinement.

If a court grants a sentence reduction, it "may impose a term of . . . supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." § 3582(c)(1)(A). A court imposing a term of supervised release may require a period of "home detention" as a condition of supervised release if the court finds that home detention is a "substitute for imprisonment." USSG § 5F1.2; *see* 18 U.S.C. § 3583(d). But no sentence reduction is warranted, so this Court need not consider adding any term of supervised

release, with or without home detention. *See United States v. Chaney*, 823 F. App'x 278, 279 (5th Cir. 2020), *cert. denied*, No. 20-6095 (U.S. Dec. 7, 2020).

This Court should also deny any request for an order directing BOP to designate him to serve her sentence in home confinement. A prisoner has no constitutional right to confinement in any particular place, including in home confinement. *See Sandin v. Conner*, 515 U.S. 472, 478 (1995); *Meachum v. Fano*, 427 U.S. 215, 224 (1976). And federal statute grants BOP, not courts, the sole authority to determine the place of incarceration. 18 U.S.C. § 3621(b); *United States v. Voda*, 994 F.2d 149, 151-52 (5th Cir. 1993); *Moore v. U.S. Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973). Section 3582(c)(1)(A) permits a court to reduce prison term when a defendant meets all the criteria discussed above, but Defendant's request for designation to home confinement does not reduce any prison term.

### V. If this Court reduces Defendant's prison term to time served, it should impose a quarantine period before release.

If this Court disagrees and grants a sentence reduction that results in Defendant's early release, the government requests that the Court's order accommodate the need to quarantine Defendant for a period of at least 14 days to protect public health. To ensure that pre-release quarantine occurs, this Court should advise the parties of its decision while retaining jurisdiction over the motion for 14 days. BOP will then place Defendant in quarantine. If Defendant has not displayed symptoms or tested positive for COVID-19 for a period of 14 days, this Court's sentence-reduction order will then issue. If Defendant instead tests positive during the 14-day period, the government will notify the Court and seek an extension of any release date until Defendant has tested negative and displayed no symptoms for at 14 days.

### Conclusion

For all these reasons, this Court should deny Defendant's motion. Should the Court instead grant the motion, this Court should ensure that its order allows for the 14-day quarantine period described above.

                                                      Respectfully submitted,

                                                      Ashley C. Hoff
                                                      United States Attorney

                        By:   */s/ Larry W. Fadler*
                                                      Larry W. Fadler
                                                      Assistant United States Attorney
                                                      Bar No. 24080125
                                                      601 N.W. Loop 410, Suite 600
                                                      San Antonio, Texas 78216
                                                      (210) 384-7100 (phone)
                                                      (210) 384-7276 (fax)
                                                      Larry.fadler@usdoj.gov

**Certificate of Service**

    I certify that on July 13, 2022, I electronically filed this document with the Clerk of Court using the CM/ECF system.

☐  The CM/ECF system will send notification to the following CM/ECF participant(s):

Opposing Counsel (name@opposingcounsel.com)

☒  I also certify that I have mailed this document by United States Postal Service to the following non-CM/ECF participant(s):

Pro Se Defendant or Non-Participating Attorney
IVAN LEE VELASQUEZ
United States Penitentiary McCreary
PO BOX 3000
Pine Knot, KY 42635

                                                    */s/ Larry W. Fadler*
                                                    Larry W. Fadler
                                                    Assistant United States Attorney